OPINION OF THE COURT
Rose H. Sconiers, J.
Plaintiffs, Ronald and Sharon Morris, by notice of motion seek an order permitting plaintiffs to add a party defendant (Niagara Asset Corp.), to amend their complaint to allege that plaintiff Ronald Morris’ injuries include a fracture of his T-12 vertebra, and to seek additional damages in the ad damnum clause.
Only defendant, Robert L. Freudenheim, responded to plaintiffs’ motion by cross-moving to dismiss plaintiff’s complaint (CPLR 3211 [a]) as against himself contending that he has established a complete defense.
At oral argument, plaintiffs’ motion was granted by this court. Plaintiffs, however, also submitted a responding affidavit of counsel in opposition to defendant’s motion and now seek to further amend their complaint to add additional language, as noted hereafter. Defendant’s counsel countered with a reply affidavit and decision was thereupon reserved.
Upon review, this court now decides as follows:
Plaintiff, Ronald Morris, was injured on December 15, 1993, in a fall down an elevator shaft at The Westbrook Apartments (The Westbrook), Buffalo, New York. Plaintiffs’ complaint alleges that defendant, Freudenheim, as the owner of The West-brook is liable in negligence for his injuries.
In his answer and in pressing his cross motion, defendant asserts that he was not the owner of The Westbrook on the date the accident occurred and submits documented evidence that The Westbrook had been previously transferred pursuant to a mortgage foreclosure proceeding, to the Federal Deposit Insurance Corporation, as receiver for Goldome Bank, on July 27, 1993.
In reliance upon Farragher v City of New York (26 AD2d 494, affd 21 NY2d 756 [1968]) the plaintiffs, however, contend that although defendant, Freudenheim, was no longer record owner of The Westbrook, he, nevertheless, owed a duty to disclose known latent defects to any new owner and, therefore, remains liable for injury occasioned by those defects until that new owner has had a reasonable time to discover them and make repair. "Where there is an undisclosed condition, and *419 the vendee [of the real property] has no knowledge of this condition, or where the vendor actively conceals it, the liability remains with the vendor until the vendee has had a reasonable time to discover and remedy it * * * This principle should be equally applicable where the vendee has knowledge of the dangerous condition at the time of the conveyance, but sufficient time has not elapsed at the time of the accident to allow the vendee to remedy the defect * * * In such circumstances, liability should remain with the vendor — the person who created the danger, or who was responsible for its continuance.” (Farragher v City of New York, supra, 26 AD2d, at 496.)
Plaintiffs contend that defendant, Freudenheim, knew that a defective condition existed with The Westbrook’s elevator because of a prior similar accident involving a fall down the same elevator shaft where plaintiff had fallen. Accordingly, plaintiffs further move to amend their complaint to allege language in conformance with the Farragher decision (supra).
Defendant, in reply, contends that Farragher (supra) is distinguishable, as the foreclosure transfer of The Westbrook did not give rise to a "vendor-vendee” relationship and thus triggered none of the special duties of a "vendor” to disclose known defects. Because the holder of the mortgage took title by operation of law, defendant contends that he had neither the opportunity nor the obligation to make any disclosures.
Additionally, because the accident occurred 139 days after transfer, defendant argues that this matter is further distinguishable from Farragher (supra) which involved a period of only 90 days from transfer to date of accident and, thus, afforded a lesser opportunity for the new owner to discover any defects. The reasonableness of the time frame herein is, of course, normally a factual issue for jury deliberation and is not a subject for review in a summary judgment motion. (Cf., Levine v 465 W. End Ave. Assocs., 93 AD2d 735 [1983].)
Additionally, this court does not believe that the defendant has otherwise stated a complete defense.
In the past, it was generally recognized that a vendor of real property is not liable for injury to a purchaser or to any other third person resulting from a defective condition existing on the premises at the time of conveyance. This common-law rule thus allowed for the free and unhindered alienating of real property.
However, as noted in Farragher (supra), where it appears that a vendor has actual knowledge of a dangerous condition *420 on the premises, having "created the danger, or who was responsible for its continuance”, a duty to disclose that condition continues beyond the time of transfer until such time as is reasonable for the new owner to make a prompt inspection of the premises and to correct any defects. (See also, Merrick v Murphy, 83 Misc 2d 39 [1975].)
Defendant contends that he is not a true "vendor” but rather involuntarily surrendered possession through foreclosure and, as such, that the special contractual relationship between a vendor and vendee does not attach. A fortiori, defendant argues that no liability extends through him to a third party, who rightfully enters the premises during the critical inspection period and is injured thereon.
This court believes, however, that reliance on the mere existence of a "vendor-vendee” relationship to avoid liability is misplaced and overly simplifies the extent of the defendant’s responsibility.
In carving out an exception to the general rule of nonliability subsequent to the transfer of real property, many courts have looked not only to the creation of the "vendor-vendee” relationship but also to the conduct of the vendor in inducing the buyer into the sale. In Pavelchak v Finn (153 NYS2d 795, affd 6 AD2d 841 [1956]), for example, the court held that a vendor who knows that a dangerous condition exists on the premises, but who, by affirmative assurances, conceals that condition from the purchaser who thereby fails to learn of the defect by making a proper inspection, is liable for any injury caused by the dangerous condition until the purchaser has actually discovered the defect.
It is granted that the defendant herein may have taken no affirmative action to conceal the alleged defective condition of The Westbrook elevator and made no assurances of safety which were relied upon by the new owner. Nevertheless, if it is shown at trial that defendant had actual or constructive knowledge, prior to the foreclosure and transfer of the premises, that an unreasonable risk of harm existed to those legitimately using The Westbrook elevator, then this court believes that defendant remains liable for at least a reasonable time, after transfer, for injuries caused by such condition. While this continued liability may be enhanced by the creation of a "vendor-vendee” relationship or by concealment of a known defect, it need not be grounded only in those occurrences.
Although plaintiffs’ cause of action sounds in negligence it essentially alleges the negligent maintenance of a nuisance *421 (defective elevator) by defendant at The Westbrook. That is, defendant’s negligent failure to correct and repair The West-brook elevator after its initial failure to operate correctly (which allegedly resulted in injury from a fall down its shaft) created a menace. In effect then, it can be argued that the nuisance grew from defendant’s negligence and thus liability is dependent on a prerequisite showing of that negligence.
Normally, in such a case, the plaintiff would be permitted to predicate his action on either a claim of negligence or nuisance or both. (See, McFarlane v City of Niagara Falls, 247 NY 340 [1928].) However, the added factor herein of title transferring from defendant before the happening of the plaintiff’s accident requires an examination of greater depth.
If the plaintiffs’ claim was based solely on defendant’s failure to exercise due care, defendant would be correct in his contention that any duty he may have owed to users of the elevator ceased upon The Westbrook’s passing out of defendant’s control on foreclosure. (See, Dayton v Amity Estates, 24 AD2d 491 [1965]; Kilmer v White, 254 NY 64 [1930]; Pharm v Lituchy, 283 NY 130 [1940].) However, this court believes plaintiff’s claim rests more upon the creation and/or continued maintenance of a nuisance, wherein liability rests upon the proximate consequences of the defendant’s conduct rather than a violation of a relative duty of care.
This distinction was succinctly set forth in Herman v City of Buffalo (214 NY 316, 320 [1915]). To constitute a nuisance, the court stated, the defendant’s actions "must have violated the absolute duty of refraining from the participating acts, not merely the relative duty of exercising reasonable care, foresight, and prudence in their performance. The wrongfulness must have been in the acts themselves rather than in the failure to use the requisite of care in doing them, and therein lies the distinction, under the facts of this case, between nuisance and negligence. The one is a violation of an absolute duty, the other a failure to use the degree of care required in the particular circumstances — a violation of a relative duty.”
Put another way, the Court in Melker v City of New York (190 NY 481 [1908]) stated that a nuisance rested not upon the degree of care used but rather on the degree of danger existing. While the Court of Appeals in Melker found that no nuisance had been established because the degree of danger was light, this court believes that in the instant case, the greater likelihood is that the jury will conclude that the danger existing from a negligently maintained elevator is, indeed, a "nuisance”.
*422 The court recognizes that a nuisance based on negligent conduct constitutes but a single wrong and that the distinction drawn between a common-law nuisance suit and one based on defendant’s negligent conduct is but a theoretical distinction. Nevertheless, it is compelling in the instant case.
Therefore, if it is also shown that the nuisance was occasioned by defendant’s actions, or lack thereof, during his period of ownership, he remains liable under the rule set forth in Farragher (supra).
The defendant’s motion to dismiss the complaint is denied and plaintiff’s motion to amend as noted herein is granted.